## DUNHAM, BUCKLEY & CO. V. DAVID SIMON ET AL.

(Case No. 3486.)

1. PARTNERSHIP — NOTICE OF DISSOLUTION.— A retiring partner can only relieve himself from liability for debts thereafter incurred in the firm name by giving express notice to all persons dealing with the firm, and the world in general, of the dissolution of the partnership.

2. INTERROGATORIES TO ADVERSE PARTY — WHEN NOT TAKEN FOR CONFESSED.— A defendant caused interrogatories to be propounded to himself, which the plaintiff crossed. Instead of answering them he appeared before the officer receiving the commission and declined to answer, on the ground that he intended to attend the trial and testify on the stand. Having appeared at the trial and testified, failure to answer the cross-interrogatories of the plaintiff did not warrant their being taken as confessed.

APPEAL from Washington. Tried below before the Hon. E. B. Turner.

The appellants Dunham, Buckley & Co., as plaintiffs below, brought suit in the district court of Washington county against David Simon, Louis Friedman, Isaac Simon and Sam Friedman as partners, under the firm name of David Simon & Friedman, on a promissory note for $1,147.58, dated September 28, 1875. By proper process Bassett & Bassett were summoned as garnishees. On the trial the court rendered judgment in favor of the plaintiffs against the defendants David Simon and Louis Friedman, and against the plaintiffs in favor of the defendants Isaac Simon and Sam Friedman, and discharged the garnishees. From this latter portion of the judgment denying them a recovery against the appellees, Isaac Simon and Sam Friedman, and the garnishees, the plaintiffs appeal.

The note sued on was dated September 28, 1875, and purported to have been executed to the plaintiffs by David Simon & Friedman. It was alleged in the original petition that the firm of David Simon & Friedman was composed of David Simon and Louis Friedman, and the appellees Isaac Simon and Sam Friedman, and that the same parties composed the firm of Isaac Simon & Friedman. The defend-

ants David Simon and Louis Friedman answered, admitting their liability on the note. The appellees Isaac Simon and Sam Friedman pleaded *non est factum*, and denied, under oath, that they were at the date of the note, or at any time after September 1, 1875, partners of their co-defendants under any firm name; to which the plaintiffs, by an amended petition, replied that for a period of two years or more before the execution of the note all the defendants had been partners in business under the several firm names of Simon & Friedman, D. Simon & L. Friedman, David Simon & Friedman, and David Simon & Louis Friedman, and Isaac Simon & Friedman; and that in the prosecution of their partnership business, which was that of peddlers, they used said firm names indiscriminately in buying, selling, giving and taking notes, making deposits, etc., etc., and that as such they had for a long period prior to the execution of the note dealt with the plaintiffs under said several firm names, and particularly under the name of David Simon & Friedman; that during said period they acknowledged and held themselves out to the world, and particularly to the plaintiffs, as such partners; and that the plaintiffs, believing them to be still partners under said firm name of David Simon & Friedman, and being induced so to believe by their representations and acts, sold and delivered to them a large bill of goods suitable for their partnership business, and took the note sued on in liquidation thereof. To this amended petition there was no answer by the appellees, nor was any general denial filed by them, nor any special denial except as above stated.

The plaintiffs then introduced a considerable amount of testimony (as is admitted by the statement of facts) showing joint dealings of all the defendants under the several firm names stated in the petition; they showed former dealings between the plaintiffs and the firm of David Simon & Friedman during the years 1874 and 1875, consisting of the purchase of goods of plaintiffs by defendants, the execution of notes and the payment of same.

The evidence on behalf of the defendants consisted of

their own testimony only. It was to the effect that they were all partners during the fall and winter of 1874 and 1875. Sam Friedman testified that he and Isaac Simon were partners in the fall and winter of 1874 and 1875 with David Simon and Louis Friedman in respect to the profits. Isaac Simon testified that they (Sam Friedman and himself) had been partners together with David Simon and Louis Friedman. There was evidence from said witnesses concerning the business transactions during the fall and winter of 1874 and 1875 in Washington county, tending to establish the existence of a partnership between them all as to the profits.

The testimony of the defendants showed that the partnership which included all the defendants was dissolved in the spring of 1875, or possibly later, but before, at all events, the date of the note sued on; that after the dissolution the new firm of Isaac Simon & Friedman included only Isaac Simon and Sam Friedman, and the new firm of David Simon & Friedman included only David Simon, who was the brother of Isaac Simon, and Louis Friedman, who was the brother of Sam Friedman, and that the purchase of goods for which the note was given, and the note itself, were on account of the new firm of David Simon & Friedman, and bound only its members.

There was neither allegation nor proof that the plaintiffs were ever notified of the dissolution of the firm of David Simon & Friedman, as originally constituted, or of the withdrawal therefrom of the appellees, Isaac Simon and Sam Friedman.

In March, 1876, Isaac Simon & Sam Friedman sold out their teams and wagons and remnant of goods, and deposited with Bassett & Bassett $696.40, intending, as stated, to withdraw it when they started home to Detroit. Bassett & Bassett refused to repay the deposit on account of the garnishment sued out in this suit. These last named defendants testified that the money belonged to them, and that no other person had any interest in it.

The court awarded judgment against the plaintiffs in favor of the appellees, Isaac Simon and Sam Friedman, and

discharged the garnishees, whose answers showed that they were indebted to said parties.

The defendants, Isaac Simon and Sam Friedman, propounded to themselves, as witnesses, direct interrogatories, to which the plaintiffs filed cross-interrogatories, the answers to which, under a commission, were to be taken in the state of Michigan, where they resided. They appeared before the notary public to whom had been intrusted the commission and the duty of executing the same, and declined and refused to be sworn or to answer to said interrogatories, stating that they would be present at the trial and would give in their evidence orally.

On the trial, the plaintiffs moved the court to take for confessed the cross-interrogatories propounded by them to the appellees who had thus refused to answer. They opposed the motion on the ground that the interrogatories had not been propounded in accordance with the statute; that the law did not authorize the prayer of the motion; and that the appellees were present in court, and could be examined by the plaintiffs, if they desired to do so; whereupon, it appearing by the plaintiffs' admission that the parties were present in court, the motion was overruled, and the court refused to permit the plaintiffs to read the interrogatories as confessed.

They were both examined on the trial as witnesses, offering themselves as such in their own behalf, and were cross-examined by counsel for the plaintiffs. Plaintiffs excepted to the ruling which disallowed them to take the cross-interrogatories for confessed, and assign it as error.

The cause was submitted to the court without a jury. The appellants assign as error on the merits of the case, "that the court erred in holding that the law of the case was with the appellees Isaac Simon and Sam Friedman, and in awarding judgment in their favor and discharging the garnishees, Bassett & Bassett, who are made appellees."

*Sayles & Bassett*, for appellants.

*Breedlove & Ewing*, for appellees.

WALKER, P. J.— The evidence establishes the fact beyond controversy, and to which no testimony is opposed, that all of the defendants had been partners together during the fall and winter of 1874–5, and also that during the years 1874 and 1875, they, under the firm name of David Simon & Friedman, had had, as mercantile customers of the plaintiffs, dealings with the plaintiffs, consisting in the purchase of goods by defendants of the plaintiffs, the execution of notes therefor and the payment of the same. It is not pretended that any notice to the plaintiffs was given, or that they knew of the dissolution of that firm before the execution and delivery of the note sued on.

The rule of law in respect to the liability of all the members of the firm which had thus been dealing with the plaintiffs previous to the date of the note sued on is clearly stated in the case of Tudor v. White, 27 Tex., 585, as follows: " That third parties cannot be affected by mere secret and private agreements between the members of a firm, by which they dissolve their connection, is an elementary principle. When they have held themselves out to the public as partners, and authorized others to contract and deal with them upon the faith of their joint liability, those who have dealt with them as partners are authorized to act upon the presumption that such relation continues, until notice is given of the dissolution of the partnership, or such facts are shown as authorize the presumption that it was known." See, also, Story on Partnership, sec. 334.

" The partnership *quoad* third persons, or in other words the liability of partners *quoad* third persons, cannot be dissolved without express notice to them, and to the world in general, that the partnership no longer exists. There is an exception to this rule in the case of a dormant partner. If the fact of his being in partnership be unknown to all the creditors of the firm, notice of his retirement is unnecessary; if it be known to a few, notice to those few is sufficient." Collyer on Partnership, sec. 120.

" A dormant partner is he whose name and transactions as a partner are professedly concealed from the world." Id., sec. 4.

The evidence does not show that any of the members of the firm were dormant partners, nor does it appear that the plaintiffs were in ignorance, whilst they dealt with and gave them credit, as to who it was that composed the partnership. Upon the state of facts developed by the evidence on the trial, we are of the opinion that the judgment of the court was erroneous and is not supported by sufficient evidence, and therefore should be reversed.

In respect to the remaining assignment of errors, that the court erred in refusing to permit the plaintiffs to take as confessed the cross-interrogatories by them propounded to those defendants who filed interrogatories to themselves, it is to be said that their right to do so is predicated upon the statutes, and whether they bring themselves within the provisions of the same or not, so as to exact their demand upon the state of case which is made, need not be determined, because, it is our opinion, that if they were entitled to the same benefits from propounding cross-interrogatories as though they had taken the initiative by propounding to such defendants direct interrogatories, yet, if the latter were in court at the time of the trial, ready and willing to be examined, the purposes of the law would have been sufficiently fulfilled as not to warrant the taking of the interrogatories as confessed. Ratcliff v. Baird, 14 Tex., 47. The statutes which regulate this subject (arts. 3748, 3754–3756, Pas. Dig.) were enacted before the privilege was conferred by law upon parties to testify in their own behalf, and were in the nature of statutory proceedings for discovery, where the party, interrogating his adversary, selected him as an involuntary witness. Under the law as it now exists, these defendants offered to testify in their own behalf, and, through their counsel, caused interrogatories to be propounded to themselves, which were crossed by the plaintiffs. We will not undertake to decide that they might not, if they had chosen to do so, recant their determination to offer their testimony in that shape. It may well be questioned whether the propounding of cross-interrogatories by the plaintiffs can be deemed such "an examination of the opposite party as a

witness" as was contemplated by art. 3754, Pas. Dig., but
that it had reference to the voluntary selection by a party
of his adversary as a witness, at a time when the latter did
not stand upon the same footing as to competency as other
witnesses.   The plaintiffs evidently had the right to obtain
the benefits of that statute by making said defendants their
witnesses, and propounding to them interrogatories-in-chief;
but this course they did not pursue, nor in any wise volun-
tarily accept them as witnesses in the case, further than they
were made such by the law which entitles all parties to
testify.

For the error in the judgment, we award that the same
shall be reversed and the cause remanded.

REVERSED AND REMANDED.

[Opinion delivered October 19, 1880.]