## CITY OF LONGVIEW v. REA.
### No. 4468.

Court of Civil Appeals of Texas. Texarkana.
Nov. 6, 1934.

Rehearing Denied Nov. 15, 1934.

Bramlette & Meredith and James L. Lattimore, all of Longview, for appellant.

P. O. Beard and Cary M. Abney, both of Marshall, for appellee.

JOHNSON, Chief Justice.

This case was filed by appellee, F. T. Rea, against appellant, City of Longview, for damages alleged to have been suffered by reason of the maintenance and operation of the city's sewer ditch in the vicinity of appellee's dairy farm. The appellee alleged that, by reason of the obnoxious odors arising from the sewer ditch and the infestation of the area with flies, mosquitoes, etc., and the poisoning of the grass on his dairy farm, a large number of his cattle had died; and that the rental value of his farm had been depreciated. The case was submitted to a jury upon special issues. The jury did not find that any of the cattle died from any of the causes complained of by appellee; but did find that appellee's dairy farm had been depreciated in rental value to the extent of $2,500, and judgment was accordingly entered for plaintiff. From an order of the court overruling its motion for new trial, defendant has perfected an appeal to this court.

By appropriate assignments of error the appellant presents that the trial court erred in refusing to grant it a new trial because of misconduct of the jury in its deliberations upon the issues of whether or not plaintiff's property had been depreciated in value, as al-

leged, and as to the amount of such depreciation.

It appears in testimony heard by the court upon appellant's motion for new trial that three of the jurors, Boyd, Morris, and Walke, personally knew of the existence and extent of the odors complained of by plaintiff, coming from the sewage ditch. The issue with respect to the existence and extent of the odors complained of was disputed in evidence. It is contended by appellant that the three jurors named, prior to reaching a verdict, expressed to other jurors their personal knowledge of the existence of the material facts in issue. Appellee contended that the statements of the three jurors were made after the verdict was signed. Eight of the jurors were sworn and testified regarding the alleged misconduct. The juror C. G. Aiken testified, in substance, that, at the beginning of the discussion of the jury in its deliberation upon the issues in question, the three jurors named told other jurors of their personal knowledge of the existence and extent of the obnoxious odors complained of, to wit:

"Q. Just state what was said. A. They made some remarks about the odor being so obnoxious and Mr. John Walke had noticed it on coming back and forth to town as he lived out that way, and Jodie Morris was the other one; Mr. Morris had cultivated some of the Wear land out there and he spoke of his experience out there and spoke of about how the odor was and everything, and about the breeding of flies and mosquitoes; and Mr. Bill Boyd was living close by and said it was very disagreeable and a nuisance out there.

"Q. Then you made your answer to the questions after the testimony had been discussed and after they (Walke, Morris and Boyd) made those statements? A. Yes, sir.

"Q. Well, state whether or not when they made those statements whether or not you believed them as to what they had seen and experienced. A. Yes, sir, I believed them; I believed they were telling the truth.

"Q. Could you say whether or not the statements they made created any impression upon your mind as to the truth of the situation down there? A. Of course it had its effect—speaking of the situation."

The juror Mr. Boyd testified that he personally knew of the existence and extent of the obnoxious odors coming from the sewage ditch as complained of by appellee; and admitted that he may have made a statement of such facts to the other jurors, at least to one of the jurors, not naming him, sitting by him

during the deliberations upon the issues and before they were decided upon. Mr. Brooks testified that he heard Mr. Walke state that he could smell the odors a good piece in passing the road; that the statement was made about the winding up of the case; that he believed what Mr. Walke said; but was not positive whether the statement was made before or after signing the verdict. Mr. Morris and Mr. Walke both testified, in substance, to having made the statements attributed to them, but testified they were made after the verdict was signed, and that, if any such statements were made by any juror prior to signing the verdict, they never heard them. Mr. Smallwood heard some of the jurors talking about the conditions after the verdict was signed, but, if any one made the statements complained of before the verdict was signed, he never heard them. Mr. Corley only heard Mr. Morris, while they were discussing the case and before they reached a verdict, say that he (Morris) had lived out there (near the dairy) on the Wear farm; but that at times the jurors were separated in bunches, and that the remarks complained of could have been made without his having heard them. Mr. Richardson testified that he heard Mr. Walke say that he had smelled the odors from the sewer ditch in passing along the road; that such statements were made while they were discussing the testimony and before agreeing on the verdict. Four of the jurors did not testify.

 It is observed that the testimony of Mr. Aiken with respect to the statements made by Mr. Boyd, and Mr. Boyd's admission that he may have made the statements during the deliberations upon the issues, appear not to have been controverted by the testimony of any of the jurors. Upon controverted testimony it is within the discretion of the trial judge to determine the facts as to whether or not misconduct is shown. And "the trial court has the same latitude in passing upon the evidence offered on the hearing of a motion for new trial as to the credibility of the witnesses and of the weight to be given their testimony, as a jury has with reference to witnesses heard upon the original trial." Bradley v. Texas & Pacific Ry. Co. (Tex. Com. App.) 1 S. W. (2d) 861, 865, pars. 7 and 8; R. S. art. 2234. But such discretion extends only to the determination of controverted testimony as to the existence of misconduct, Stehling v. Johnson (Tex. Civ. App.) 32 S. W. (2d) 696; that where material misconduct is shown to exist, as by overt act of any one or more of the jurors expressing to the jury, or to any one of them, personal

knowledge of the material facts bearing upon the issue to be determined, "it is held that as a matter of law there may be error, and the issue is made to turn on a reasonable doubt as to whether the misconduct might have affected the purity of the verdict," Letsinger v. Panhandle & S. F. Ry. (Tex. Civ. App.) 286 S. W. 1107, 1111; and "if, upon a consideration of the whole of the pertinent record, it is reasonably doubtful whether or not the improper conduct affected the amount of the verdict or the decision of any other material issue, the verdict should be set aside by the trial judge; if, in such a case, a new trial is not granted, there is an abuse of discretion by the trial judge, and reversal becomes the duty of appellate courts." Moore v. Ivey (Tex. Com. App.) 277 S. W. 106, 107. See Tex. Jur., § 30, p. 32. Under the rule announced in Moore v. Ivey, supra, failure to grant appellant's motion for a new trial was error.

■■■■ Appellee has filed cross-assignment of error complaining of the action of the trial court in charging the jury over his objection on the burden of proof. Some of the issues were so framed as to require answers to be upon the preponderance of the evidence, some were not. Over objections of appellee, the trial judge specially charged the jury as follows: "You are instructed in this case that the burden of proof is upon the plaintiff to establish the affirmative of all of the issues submitted to you by a preponderance of the evidence; by a preponderance of the evidence is meant the greater weight of the legal and competent evidence on the witness stand." Where the form of the special issue does not require answers to be based upon the preponderance of the evidence, it is held not to be error, for the trial judge to charge the jury with respect to the burden of proof. Psimenos v. Huntley (Tex. Civ. App.) 47 S. W. (2d) 622; Houston & T. C. Ry. Co. v. Stevenson (Tex. Com. App.) 29 S. W. (2d) 995. It is held that a charge to the jury on burden of proof which indicates to the jury the effect of their answers is erroneous. Gilmer v. Graham (Tex. Com. App.) 52 S. W. (2d) 263. The approved method of presenting special issues to the jury is suggested in Federal Surety Co. v. Smith (Tex. Com. App.) 41 S. W. (2d) 210, 214, as follows: " 'Do you find from the preponderance of the evidence that' (following with the question to be determined), so framing the question, upon each issue, as to place the burden of proof where it properly belongs." Referable to the issues which were so framed as to require the findings of the jury to be made from a preponderance of the evidence, the additional special charge given in this case is subject to the criticism of unduly stressing the burden of proof resting on plaintiff. Error is less apt to be committed if the approved form is followed.

The judgment of the trial court is reversed, and here remanded for another trial.